Case 4:18-cv-02856   Document 127   Filed on 08/01/24 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
August 02, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARK HERNANDEZ, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. 4:18-2856 |
| § | |
| MANUEL POVEDA, JR., *et al.*, § | |
| § | |
| Defendants. § | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Mark Hernandez, formerly an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), alleges that the defendants used excessive force against him in violation of the Eighth Amendment. Defendants Edgar Razo and Brady Preischel[1] have moved for summary judgment (Dkt. 97). Hernandez has responded (Dkt. 110), and the defendants replied (Dkt. 114). The third defendant, Manuel Poveda, Jr. has failed to plead or otherwise defend in response to the pleadings served on him. The Clerk entered default against Poveda (Dkt. 95; Dkt. 96), and a motion for default judgment is pending (Dkt. 108).

Having considered the pleadings, the motion and briefing, the applicable authorities, and all matters of record, the Court determines that the summary judgment motion filed by Razo and Preischel should be **denied**. The Court's reasons are explained below.

---

[1] Preischel is also known as Brady Cullen. Many documents in the record refer to him as Cullen.

I.      **BACKGROUND**

Hernandez alleges that Razo, Preischel, and Poveda used excessive force against him at the Wynne Unit on November 28, 2016. Razo and Preischel seek summary judgment and have submitted the following: records from Hernandez's disciplinary case stemming from the same events (Dkt. 97-1); grievance records (Dkt. 97-2); medical records (Dkt. 97-3; Dkt. 97-4; Dkt. 97-7); TDCJ's Use of Force Report regarding the incident (Dkt. 97-5) (M-08108-11-16, EAC Incident No I-19710-11-16); photographs of Hernandez's injuries (Dkt. 97-6); and a video recording (Dkt. 106; Dkt. 107). Hernandez's response additionally submits TDCJ's Use of Force Plan (Dkt. 111-2); excerpts of the defendants' depositions (Dkt. 111-3; Dkt. 111-4); Hernandez's affidavit (Dkt. 112-2); contemporaneous statements from inmates who witnessed the incident (Dkt. 112-3; Dkt. 112-4); and Hernandez's medical records after his release from TDCJ (Dkt. 112-7).

According to a supervisor's summary in TDCJ's Use of Force Report, Preischel was escorting Hernandez from his cell to a different location in the Wynne Unit on November 28, 2016. Hernandez initially was compliant and walked down a flight of stairs as instructed. Preischel then ordered him to put his hands behind his back for restraints and Hernandez complied; Preischel cuffed his left wrist. The report then states that Hernandez "pulled his right hand from his back" and, when Preischel ordered him to put it back, "pulled away from [Preischel] in a violent manner" (Dkt. 97-5, at 33). Preischel then "placed Offender Hernandez on the ground" (*id.*). Razo arrived, initiated the Incident Command System (ICS), and then assisted Preischel "by restraining Offender Hernandez with restraining holds" (*id.*). The report states that Hernandez "continued to resist" and

"attempted to get up by pushing against" Preischel and Razo, at which time Razo "struck Offender Hernandez in the head area with a closed fist in order to gain compliance" (*id.*). Poveda then arrived and cuffed Hernandez's right wrist (*id.*). The video recording then began, after the incident had ended (*id.*).

The report states that Hernandez was treated at a TDCJ clinic and then transported to Huntsville Memorial Hospital for treatment of his injuries, which included a forehead laceration (*id.*; Dkt. 97-7). It includes statements from Preischel, Razo, and Poveda denying that they used excessive force and stating that Hernandez had refused restraints, sworn at staff, and created a security threat (Dkt. 97-5, at 34-41 (statements from the defendants on the day of the incident); *id.* at 11, 13-15 (statements from the defendants on December 15, 2016)). It also contains statements from two inmate witnesses taken on the day of the incident (*id.* at 48-49; *see* Dkt. 112-3; Dkt. 112-4). One inmate, Desmond Lawrence, stated that Hernandez was unable to place his hands behind his back because of his back injury, that Hernandez was trying to explain when Preischel and Razo slammed him to the ground, and that Poveda kicked Hernandez in the face (Dkt. 97-5, at 48). The second, Jan Allen, stated that Hernandez explained to the officers that he had a medical problem with his back, that Poveda kicked Hernandez in the face, and that Razo and Preischel punched Hernandez on the head (*id.* at 49).

On December 29, 2016, officials concluded after investigation that, although Hernandez and other inmates claimed excessive force was used, "no credible evidence" supported Hernandez's allegations:

> In conclusion, [a]lthough the offender and other offenders claimed excessive force was used, specifically, that Sergeant [Preischel] "slammed" the offender to the ground and that Officer Poveda kicked the offender in the head, there was no credible evidence to support the allegations. Sergeant [Preischel] stated he forced the offender downward due to the offender's aggressive actions. Officer Poveda denied kicking the offender and Sergeant [Preischel] stated he did not witness such action and Officer Razo stated he was present and it did not occur. There were no other staff witnesses. Officer Razo stated he did strike the offender one time in order to prevent an assault on him or Sergeant [Preischel]. Sergeant [Preischel] verified that the offender was violently resisting and swinging his arms and kicking his legs. The offender did sustain injuries that were considered to be serious due to the treatment (sutures), however it appears to be consistent with the level of force used in that the offender was forced to the floor and struck one time. At that time there appears to be no violations on behalf of staff.

(*id.* at 12). Despite the conclusion that Hernandez's allegations were unsupported, an administrative monitor referred the investigation to the Office of the Inspector General on January 25, 2017, "due to the severity of [his] injury" (*id.* at 7). On February 14, 2017, the Office of the Inspector General declined to open an investigation, stating that the evidence did not support further criminal investigative efforts (*id.*).

The defendants present disciplinary records showing that, in connection with the same incident on November 28, 2016, Hernandez was charged with failing or refusing to obey an order (Code 24.0) and creating a disturbance (Code 23.0) (Dkt. 97-1, at 5). At a hearing on December 8, 2016, Hernandez pleaded guilty to both charges. He was found guilty of the charge of failing or refusing to obey an order and was punished by the loss of 30 days of good-time credit and other penalties (*id.* at 4). However, the charge of creating a disturbance was dismissed (*id.* at 4, 12).

Hernandez presents additional evidence about the use of force. He submits an affidavit stating that, due to serious lower back pain at the time, he required Preischel's

assistance getting off of his bunk and descending the stairs (Dkt. 112-2, at 2, ¶ 3). When he reached the last step, he dropped to one knee because his "lower back gave out" and told Preischel about his pain, but that Preischel denied his requests for medical attention or to be handcuffed in front of his body (*id.* at 2-3, ¶¶ 4-6). He states that, when Preischel ordered him to place both hands behind his back, he gave his left hand to Preischel, who cuffed it (*id.* at 3, ¶ 7). He "then attempted to bring [his] right hand close enough behind [his] back . . . twice," but "was unable due to the pain in [his] back" (*id.*).

Hernandez denies that he pulled his right hand away from Preischel. As support, he points to Preischel's deposition testimony that, when he accused Hernandez of pulling away, he was referring to Hernandez "keeping [his] right arm to the right side of his body" (Dkt. 111-3, at 7). After Preischel testified that Hernandez "was in hand restraints pulling" and was "actively resisting the hand restraint process," plaintiff's counsel asked additional questions:

> Q. And what is your definition of "resisting"?
> A. Not placing his hands behind his back.
> . . . .
> Q. And what does "pull away" mean in this – in the second instance?
> A. He kept his hands from behind his – in front of his body or beside his body.
> Q. So is your testimony that keeping Mr. Hernandez's right arm to the right side of his body constituted pulling away?
> A. Correct.

(*id.* at 6-7; *see id.* at 12 (Preischel agreed that "actively resisting" meant "not placing his hand behind his back," rather than "actively trying to go to another location or step away")). Preischel testified that, before he placed Hernandez on the ground, Hernandez did not swear at him (*id.* at 10), was not trying to step away from him (*id.* as 12), did not try to

grab or hit him (*id.*), and made no movement towards him with his right hand (*id.* at 20). He further testified that he was not concerned for his own safety when walking to and descending the staircase with Hernandez (*id.* at 17).

Hernandez avers that he made no aggressive statements, actions, or movements towards the defendants. Dkt. 112-2, at 3, ¶ 10 ("I did not verbally threaten, physically strike, or physically harm the officers involved"). He claims that Razo punched him repeatedly and that Poveda kicked him. *See*, *e.g.*, *id.* at 2, ¶¶ 8-9 (affidavit alleges that Preischel and Razo "slamm[ed] [him] to the ground and punch[ed] [him] on the head," and that Poveda "kicked [his] head" while he was on the ground).

In the defendants' statements from December 16, 2016, Razo indicated that he struck Hernandez only once, and Poveda denied kicking him.[2] All three defendants claimed that Hernandez was swinging his elbows, kicking his legs, or otherwise resisting at the time Razo arrived on the scene.[3] However, Hernandez cites to some statements that are inconsistent with the reports. For example, Preischel testified at deposition that Hernandez's legs were not moving while he was on the floor.[4] Razo testified that, at the

---

[2]   *See* Dkt. 97-5, at 13 (Razo stated that he "struck [Hernandez] with a closed fist to the left side of the face" in order to prevent Hernandez from "get[ting] a hold of" either Preischel or Razo or "an assault"); *id.* at 15 (Poveda stated, "[a]t no time did I kick or place my foot on the offender").

[3]   *See id.* at 14 (Preischel stated that Razo arrived "to help due to [Hernandez'] continued aggressive resistance of swinging elbows and legs kicking"); *id.* at 13 (Razo stated that Hernandez was "violently cursing," was "continuously trying to get out of the restraint holds [Razo] and [Preischel] had on him," and "pulled off the ground"); *id.* at 15 (Poveda stated that he observed Preischel and Razo "trying to keep [Hernandez] down" and that Hernandez "kept resisting").

[4]   *See*, *e.g.*, Dkt. 111-3, at 13 (Preischel testified that, after he was on the ground, Hernandez was "flailing," "resisting," and "pushed up off the ground and swinging," but the action was "solely

6 / 20

time he punched Hernandez, Hernandez was on the ground and "positioned over his hands with his hands to his chest" (Dkt. 111-4, at 16).

At a TDCJ clinic immediately after the incident, officials documented his injuries with photographs (Dkt. 97-6). Hernandez complained that his back hurt and requested that he be handcuffed in front of his body.[5] Clinic staff noted a deep laceration over his left eye, several contusions on his head, and moderate bleeding, and sent him to Huntsville Memorial Hospital (Dkt. 97-3 at 64-67). At the hospital, he was assessed with a closed head injury, a contusion, and a laceration, for which he received two sutures (Dkt. 97-4, at 110-14 (discharge summary); Dkt. 97-3, at 74-103 (hospital records)). In the weeks following, Hernandez received follow-up care at his unit and continued to complain of back pain and request a front handcuff pass (*see*, *e.g.*, *id.* at 30-31). After his release from TDCJ, he sought further medical assistance (Dkt. 112-7).

Hernandez presents TDCJ's Use of Force Plan, the protocol that governs TDCJ officers before, during, and after a use of force and is designed to prevent unnecessary force. He cites to a provision stating that hand restraints should not be more confining than circumstances require, with due consideration for the "comfort and welfare" of the inmate (Dkt. 111-2, at 11). He also points to the plan's policy statement: "It is the policy of the

---

from his torso up"); *id.* at 22 (Preischel testified that, although Hernandez was "flailing" on the ground, he did not see Hernandez's "lower extremities moving about").

[5]      Hernandez's medical records reflect that he received treatment at TDCJ for the back pain before the incident, including on November 15, 2016, just weeks before the use of force (Dkt. 112-1, at 7-9). Hernandez previously had requested a pass permitting him to be handcuffed in front of his body (*id.* at 63).

TDCJ that force shall be used only when necessary and to the extent necessary to gain compliance" (*id.* at 21). The plan provides that a use of force is "non-provoked" if the force is "used in response to an action by an offender if the offender's action did not involve physical assault, attempts at physical harm, an escape attempt, mutiny, rebellion, serious damage to property, or force used in response to an offender's verbal abuse only" (*id.* at 8). Preischel and Razo each testified at deposition that he was aware of the plan and that it governed his actions (Dkt. 111-3, at 15-16, 23; Dkt. 111-4, at 17).

TDCJ's Use of Force Plan instructs officers to take "[a]ll reasonable actions" to stabilize a situation before using force, including the following "whenever possible": listening; attempting to calm or reason with the inmate; explaining consequences of the inmate's behavior; notifying the security supervisor; requesting a video camera and operator; securing the area; requesting additional security staff; making "a visible show of force with staff presence"; and implementing the ICS (Dkt. 111-2, at 21-22). Hernandez alleges that Preischel and Razo failed to listen to him or reason with him, as the plan requires.[6] He claims that all defendants failed to follow the plan's additional steps before

---

[6]     At his deposition, Preischel testified that he had reasoned with Hernandez by repeating his command for Hernandez to place his hands behind his back:

> Q.   Did you try to reason with Mr. Hernandez at all?
> A.   I gave another – just an order, the second order to put his hands behind his back.
>       . . . .
> Q.   What is your understanding of the term "reason" as I'm using it in this question?
> A.   Trying to talk sense into him.
> Q.   And based on your definition, talking sense into him was simply repeating your command?
> A.   Correct.

using force against him, including requesting a video camera, requesting additional staff, or making a visible showing of force with staff presence. The defendants' statements in TDCJ's report indicate that they did not follow the plan's steps before using force because time did not allow (Dkt. 97-5, at 34 (Preischel); *id.* at 38 (Razo)).

Hernandez filed a grievance about the incident and requested that Preischel, Razo, and Poveda be investigated for assault. TDCJ officials denied his grievance stating that the incident had been investigated by the Office of the Inspector General, who had found insufficient evidence to open a case (Dkt. 97-2, at 4).

## II. STANDARDS OF REVIEW

The defendants have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present

---

(Dkt. 111-3, at 11).

specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.  Evidence not referred to in the response to the motion for summary judgment is not properly before the court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### III. <u>ANALYSIS</u>

Hernandez brings his claims under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016).  Because Hernandez was, at all relevant times, a convicted felon in state prison, his excessive-force claims are governed by the Eighth Amendment.  A prison official violates the Eighth Amendment when force is not "applied in a good-faith effort to maintain or

restore discipline," but rather "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

The defendants argue that summary judgment is warranted in their favor on all claims for two reasons. First, they claim that Hernandez's disciplinary conviction for failing or refusing to obey an order bars his claims in this case. Second, they argue that they are entitled to qualified immunity.

## A. <u>Disciplinary conviction</u>

Preischel and Razo move for summary judgment on Hernandez's claims and argue that, if he were to prevail on his Eighth Amendment claim, the claim would necessarily imply the invalidity of Hernandez's disciplinary conviction for failing or refusing to obey an order. Under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), a claim under 42 U.S.C. § 1983 that bears a relationship to a conviction or sentence is not cognizable unless the conviction or sentence has been invalidated. To recover damages based on allegations of "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a civil rights plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." *Id.* at 487. If a judgment in favor of a civil rights plaintiff "would necessarily imply the invalidity of his conviction or sentence," then the complaint "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. *Heck* applies to convictions in prison disciplinary settings that result in a change to the prisoner's sentence,

including the loss of good-time credits. *Gray v. White*, 18 F.4th 463, 467 (5th Cir. 2021); *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019).

In this case, Hernandez was convicted of failing or refusing to obey an order and lost 30 days of good-time credit. He pleaded guilty to creating a disturbance but, because the charge against him was dismissed without a conviction, the charge does not bar his claim under *Heck*. *See Thompson v. Clark*, 596 U.S. 36, 49 (2022) (to demonstrate a "favorable termination" of a criminal prosecution for purposes of a malicious prosecution claim, a plaintiff "need only show that the criminal prosecution ended without a conviction" and is not required to show that the prosecution "ended with some affirmative indication of innocence").[7] The question before the Court, therefore, is whether Hernandez's conviction for failing or refusing to obey an order bars his claim that the defendants used excessive force in violation of the Eighth Amendment.

The Fifth Circuit has held that civil-rights claims that are "intertwined" with disciplinary rulings are not necessarily barred by *Heck*. *Santos v. White*, 18 F.4th 472, 476 (5th Cir. 2021). "Rather, in applying *Heck*, a court must bar only those claims that are necessarily at odds with the disciplinary rulings." *Id.* at 476-77 (cleaned up) (quoting *Aucoin v. Cupil*, 958 F.3d 379, 383 (5th Cir. 2020)). A claim is *Heck*-barred "only if granting it requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Id.* at 476 (cleaned

---

[7] The defendants' motion inaccurately states that Hernandez was convicted of creating a disturbance (Dkt. 97, at 3, 8-9, 12). Their reply revises the argument to rely only on Hernandez's conviction for failing or refusing to obey an order (Dkt. 114, at 1-2).

up); *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). The Court's inquiry is fact-intensive and "dependent on the precise nature of the disciplinary offense." *Santos*, 18 F.4th at 476. Courts must assess "whether a claim is "temporally and conceptually distinct" from the related conviction and sentence" and ask whether the civil-rights claims "can coexist" with the disciplinary conviction without "calling it into question." *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (cleaned up).

In support of their argument that Hernandez's claims are barred, the defendants point to his more definite statement, in which he claims that he never refused an order and had obeyed Preischel, arguing that these statements are inconsistent with his conviction.[8] However, even if Hernandez's statements are inconsistent with his conviction for failing or refusing to obey an order, they are not necessarily inconsistent with his Eighth Amendment claim. It is possible, for example, that Hernandez failed or refused to obey Preischel's order to place his right hand behind his back, but that the defendants' subsequent use of force nevertheless violated the Eighth Amendment because it was not "applied in a good-faith effort to maintain or restore discipline," but rather "maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 7; *see also Gray*, 18 F.4th at 468 (because it was "unclear" whether it was possible for the plaintiff to have committed all ten rule violations and for the officers' use of force to have been applied maliciously and sadistically to cause harm, the defendants had not met their burden for summary judgment

---

[8]   *See* Dkt. 34, at 6 ("I did obey Cullen's order"); *id.* at 16 ("No force was necessary at all"); *id.* at 48 ("I never refused an order").

based on *Heck*); *Bourne*, 921 F.3d at 491 ("A finding of excessive force would not negate the prison's finding that Bourne violated its policies and was subject to disciplinary action as a result."); *Bush*, 513 F.3d at 498 ("a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance").

Regarding Razo, who was not present when Hernandez failed or refused to obey Preischel's order, Hernandez's claim that Razo punched him is "temporally . . . .distinct" from his disciplinary conviction and can co-exist without calling the conviction into question. *See Smith*, 900 F.3d at 185.

Construing all facts in the light most favorable to the plaintiff, these allegations support an excessive-force claim that could co-exist with his disciplinary conviction without calling the conviction into question. Therefore, this lawsuit may proceed. The defendants' motion for summary judgment based on *Heck* will be denied.

### B.   Qualified Immunity

The defendants move for summary judgment based on qualified immunity, and the plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d

154, 169 (5th Cir. 2015) (cleaned up); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (cleaned up). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (cleaned up). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

On summary judgment, the plaintiff has the burden to raise genuine issues of material fact regarding the violation of a clearly established right and the reasonableness of the defendants' conduct. *See Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021); *Amador v. Vasquez*, 961 F.3d 721, 726-27 (5th Cir. 2020); *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016). A court must properly credit the plaintiff's evidence. *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present absolute proof, but must offer more than mere allegations." *King*, 821 F.3d at 654 (cleaned up). "The plaintiff's facts "should not be accepted" when evaluating a qualified immunity defense if they are "blatantly contradicted" and "utterly discredited" by video evidence. *Bourne*, 921 F.3d at 490 (cleaned up).

### 1. Eighth Amendment Violation

The Court first addresses whether Hernandez has alleged facts that would constitute an Eighth Amendment violation. The "core judicial inquiry" for Hernandez's Eighth Amendment claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). "[Not] every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. The Eighth Amendment prohibition "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (cleaned up); *Bourne*, 921 F.3d at 491 ("The amount of force that is constitutionally permissible must be judged by the context in which that force is deployed") (cleaned up).

*Hudson*, applying *Whitley*, identified five factors relevant to the Court's analysis: (1) the extent of injury suffered by the inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of a forceful response. *Id.* at 7; *Bourne*, 921 F.3d at 491. Regarding injury to the inmate, the Court stated, "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010); *Bourne*, 921 F.3d at 492. The *Hudson* standard focuses on "the detention facility official's subjective intent to punish," and intent is determined by

reference to the *Hudson* factors. *Cowart v. Erwin*, 837 F.3d 444, 452-53 (5th Cir. 2016) (cleaned up).

Regarding the first *Hudson* factor, extent of injury, Hernandez cites to evidence showing that he suffered from a laceration above his left eye, contusions, and a closed head injury, in addition to bruising and back pain, and that he was transported to Huntsville Memorial Hospital for treatment. The defendants do not contest this evidence. This factor weighs in Hernandez's favor.

The second *Hudson* factor is the need for force. The defendants argue that force was necessary because Hernandez failed or refused to obey an order, as his disciplinary conviction shows, and because video evidence shows Hernandez after the incident with both hands cuffed behind his back, thus demonstrating that he was capable of submitting to restraints (Dkt. 114, at 8-10). In response, Hernandez argues that his actions and movements prior to and during the incident did not justify physical force against him. His affidavit avers that he informed Preischel of his injury and his difficulty placing his hands behind his back (Dkt. 112-2, at 2-3, ¶¶ 3-6).[9] He maintains that his failure to keep his right hand behind his back did not justify forcing him to the ground because he did not step away from, make any aggressive motion toward, or verbally abuse Preischel (Dkt. 112-2, at 3, ¶ 10; *see* Dkt. 111-3, at 6-7, 10, 12, 20). He thus argues that the force against him was "non-provoked" as TDCJ defines the term. *See* Dkt. 111-2, at 8 (definition of "non-provoked"

---

[9] Hernandez's affidavit is competent summary judgment evidence under Rule 56. *See Bourne*, 921 F.3d at 493; *Perez v. Collier*, No. 20-20036, 2021 WL 4095263, at *3 (5th Cir. Sept. 8, 2021).

17 / 20

in TDCJ's Use of Force Plan); *see also id*. at 11 (instruction in plan for officers to give "due consideration" to the inmate's "comfort and welfare"). Viewing all facts in the light most favorable to Hernandez, the record reflects genuine questions about whether force was necessary at the time Preischel pushed him to ground.

The third *Hudson* factor is the relationship between need for force and the amount of force the defendants used. The defendants argue that the amount of force they used against Hernandez was justified because Hernandez refused to accept a housing assignment, refused to submit to hand restraints, pulled away from Preischel when attempting to apply hand restraints, swung his elbows and kicked at officers, and created a disturbance during count time (Dkt. 114, at 7). Although the record contains some evidence supporting their statements, it also contains sworn statements from Hernandez that, after he was on the ground, he did not push up, swing his arms, or kick his legs, but that the defendants continued to use force against him. *See*, *e.g.*, Dkt. 112-2, at 3 ¶¶ 8-10; Dkt. 34, at 13-14, 28-32. Thus, viewing all facts in the light most favorable to Hernandez, the record reflects genuine questions about whether continued force was necessary after he was on the ground. *See Bourne*, 921 F.3d at 492 (inmate had demonstrated a genuine issue of material fact as to whether the force employed after he was restrained on the cell floor violated the Eighth Amendment).

Regarding the fourth factor, the threat that the defendants reasonably perceived, the defendants argue generally that Hernandez refused to submit to hand restraints, pulled away, swung his elbows and legs, and created a disturbance. As recounted above, Hernandez presents evidence contesting each of these allegations, stating that he was

unable to keep his right hand behind his back, did not pull away, and did not swing his limbs. These genuine fact questions are material to the fourth factor.

Finally, the fifth *Hudson* factor is the defendants' efforts to temper the severity of the force used. The defendants argue that, because Hernandez acknowledged that Preischel allowed him to try at least three times to put his right hand behind his back, Preischel attempted to temper the severity of force (Dkt. 114, at 9). However, Hernandez presents evidence that the defendants failed to follow other steps in TDCJ's Use of Force Plan. *See* Dkt. 111-3, at 17-18 (Preischel did not explain the consequences of Hernandez's behavior, request a video camera, or request additional staff)); Dkt. 111-4, at 10 (Razo testified that he did not have time to request a video camera or defuse the situation because "it was already a use of force situation when [he] got there"); Dkt. 97-5, at 34, 38 (Preischel's and Razo's reports after the incident state that time did not allow them to follow the plan's steps). Additionally, as recited above, Hernandez alleges that the defendants continued to use force against him after he was on the ground with his hands under his body. Therefore, he has demonstrated a genuine issue of material fact as to whether the defendants made efforts to temper the severity of the force.

Because each of the genuine disputes above is material to the question of whether Hernandez's allegations would constitute an Eighth Amendment violation, the defendants have not shown that they are entitled to summary judgment on this record.

### 2. Objective Reasonableness

The Court next must address whether the defendants' conduct was "objectively reasonable in light of clearly established law." *Carroll*, 800 F.3d at 169 (cleaned up). At

the time of the incident in 2016, *Hudson* was clearly established law. The defendants argue that their actions were objectively reasonable because Hernandez had refused to accept a housing assignment, refused to submit to hand restraints, pulled away from Preischel when he attempted to apply restraints, and swung his elbows and legs (Dkt. 97, at 12; Dkt. 114, at 10). However, Hernandez has demonstrated genuine issues regarding facts that are material under *Hudson*, including whether Preischel or Razo used force that was excessive to the need and continued to use force against him after he was subdued. If these facts ultimately are proven, then a reasonable official in the defendants' situation would have known that his or her actions violated clearly established law.

Because Hernandez has demonstrated genuine issues of fact that are material to the *Hudson* factors, this Court may not resolve the issues on summary judgment. Rather, because "there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question." *See Tucker*, 998 F.3d at 172 (cleaned up). Summary judgment on qualified immunity grounds will be denied.

## IV.   CONCLUSION

For the reasons stated above the Court **ORDERS** that the defendants' motion for summary judgment (Dkt. 97) is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on        August 1        , 2024.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE